# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GEMCAP LENDING I, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-2481-CM-KGG |
| ) | |
| WILLIAM SHANE PERTLE; MINDY ) | |
| J. MONTGOMERY; BANCCENTRAL ) | |
| NATIONAL ASSOCIATION, a national ) | |
| association; MARTIN MCNEIL; VAN ) | |
| OSDOL, PC, a Missouri professional ) | |
| corporation; JONATHAN W. DAVIS; ) | |
| CHRISTOPHER TUCKER; and ) | |
| DOES 1-25, inclusive, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the motion to dismiss brought by two defendants, law firm Van Osdol, PC, and its employee attorney Jonathan W. Davis. (Doc. 126.) The lawsuit was initiated by California-based commercial lender GemCap Lending I, LLC ("GemCap"), and was initially filed in California superior court, removed to federal court in that district, then transferred, in part, to this court. Also in this court is a companion case,[1] the receivership proceeding of GemCap's Kansas borrowers, a cattle ranch and farm operation known as Pertl Ranch, LLC; Pertl Ranch Feeders, LLC; and Outlaw Farms & Trucking, LLC (collectively "Pertl"). This court recently recounted the background of the subject loan transactions in a memorandum and order filed in the receivership proceedings at Docket No. 226. Additional factual background will be added here, as necessary, taken from GemCap's first amended complaint ("the complaint") in the present matter. (Doc. 1-1.)

---

[1] *GemCap Lending I, LLC v. Pertl Ranch Feeders LLC, et al.*, C.A. No. 2:18-cv-2622-CM-JPO.

-1-

**Background**

In summary, GemCap, which specializes in loans to financially-distressed companies, loaned Pertl over $14 million dollars in 2017, allegedly in reliance on fraudulent misrepresentations about Pertl's true financial condition made by all defendants, acting in collusion. The loans were secured by Pertl's real and personal property, including livestock, and personal guaranties of Pertl family members. Following a series of forbearance agreements in 2018 provided by GemCap, again based on alleged misrepresentations, Pertl has now defaulted on these loans. GemCap has since discovered that Pertl also continued to borrow significant sums of money from a local bank, defendant BancCentral National Association ("BancCentral"). BancCentral now claims competing security interests in some of the same collateral GemCap believes it had previously secured. GemCap alleges that BancCentral has wrongfully extracted monies from Pertl bank accounts and misrepresented and withheld important information from GemCap related to Pertl collateral, and other financial transactions. Other defendants relevant to the present analysis include Pertl's chief financial officer, Christopher Tucker, and the ranch's owner, William Shane Pertl ("Shane"). Pertl's present Receiver, James Cullen, who, at the behest of GemCap, previously acted as its chief restructuring officer, also has a relevant role.

Throughout the pertinent time period, Pertl received legal advice from Kansas attorney Jonathan W. Davis, who was employed by Van Osdol, PC, a Missouri-based law firm with a Kansas office. GemCap has named Van Osdol as a defendant, based on the doctrine of *respondeat superior*, which imposes vicarious liability on an employer for the conduct of its employee. (Doc. 146, at 6.) The complaint contains no separate allegations of wrongful conduct on the part of the firm. GemCap makes general allegations against Davis and Van Osdol (collectively "Davis"), including that Shane always consulted with Davis before Pertl made any commitments, that Davis was often a party to conference calls, that Davis was closely involved in Pertl's day-to-day operations, and that Davis

advised Pertl on who to pay and how much. This conduct convinced GemCap that, "for all intents and purposes," Davis served as a Pertl officer, and his conduct "bled into" Pertl's fraudulent dealings with GemCap. (Doc. 1-1, at ¶¶ 45–47, 49.) GemCap's more specific allegations against Davis focus on three transactions: 1) the cash flow forecast; 2) the Cargill cattle sale; and 3) the preparation of the information memorandum.[2]

### *The cash flow forecast*

As part of the amended forbearance agreement in October 2018, Pertl agreed to liquidate certain inventory and to provide Cullen with a cash flow forecast. Pertl told GemCap that it intended to sell cattle over the next thirteen weeks, the proceeds from which would enable Pertl to get the feedlot operation up and running, as well as to pay back some of the over-advances on GemCap's credit line. As the cattle were part of GemCap's collateral, Cullen requested that Pertl inform him of all pending cattle sales, and to provide him with all related paperwork. While preparing the cash flow forecast, Shane Pertl and Christopher Tucker asked Davis to review the draft. According to GemCap, Davis then instructed Shane and Tucker to remove all references to projected cattle and hay sales because those sales would "immediately place the Borrower in default under the forbearance." (Doc. 1-1, at ¶ 49.)

### *The cattle sale*

Pertl alleged that it sold over $500,000 worth of cattle to Cargill in October 2018, but failed to produce any documented verification to Cullen or GemCap. Shane showed Cullen a text message from a "Lisa White," purportedly of Cargill, noting that the sale had gone through. Shane also put a

---

[2] GemCap also asks the court to consider allegations included in its RICO case statement, submitted to the United States District Court for the Central District of California on April 26, 2019. (Doc. 78.) Although Davis has made no objection, the court refrains from consideration of this document as it was filed five months after the first amended complaint and, so, was not incorporated into the complaint; nor does it fit into any of the other exceptions to the general rule that a court considers only the allegations in the complaint when ruling on a motion to dismiss. *See Bernieke v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

call through to White, put Cullen on the line and had her verify the authenticity of the sale to him. Cullen was still suspicious but, according to GemCap, was reassured by Davis who confirmed the details of the sale and explained that Cargill traditionally did not provide documentation (that is, weight or scale tickets) for its livestock transactions. (Doc. 1-1, at ¶ 40.) Davis also corroborated that Cargill was typically slow in issuing payment.

GemCap alleges that, the following month, November 2018, Shane admitted under oath that the whole Cargill cattle-sale story was a fabrication, and that Lisa White was a cell phone app invention. (Doc. 1-7, at 85–88.) According to GemCap, Shane admitted further that he had sold $3.5 million's worth of calves and cows during this time period, but never removed them from Pertl's official inventory and never paid over any of the proceeds to GemCap. (Doc. 1-7, at 77.) GemCap believes that Davis helped Shane carry out this deception, based on his integral role in all Pertl decision-making, and based on his comments to Cullen about Cargill.

### *The information memorandum*

At around the same time, Cullen drafted an information memorandum for Pertl to provide to GemCap as a condition of the forbearance agreement. Cullen worked with Shane, Davis and Tucker to set forth an accurate picture of Pertl's assets. Before sending the memorandum to GemCap, Cullen sent copies to Shane, Davis and Tucker. Davis confirmed, in writing, that the information in the memorandum was accurate. However, in hindsight, GemCap later realized that the memorandum was inaccurate because it included the fabricated sale to Cargill. (Doc. 1-1, at ¶ 41.)

### *The claims in the complaint*

According to GemCap, these allegations form the basis for five claims against Davis and Van Osdol, as set forth in GemCap's twelve-count complaint. In Count I, GemCap alleges that all defendants colluded and conspired in an elaborate scheme to defraud GemCap, in violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Count IV alleges that Davis and Van Osdol, along with Shane, Tucker and the Does, committed fraud when they made representations to GemCap about Pertl's inventory base, assets, projected sales and the Cargill sale. In Count V, GemCap alleges that Davis, Shane and Tucker were negligent when they misrepresented Pertl's financial status, leading GemCap to believe, mistakenly, that Pertl would be able to fulfill its obligations. Count VI alleges professional negligence against Davis and the Does for issuing legal opinions misrepresenting Pertl's financial status in order to induce GemCap to loan Pertl money. And, finally, in Count XII, GemCap sets forth a claim under California's Business and Professions Code section 17200 alleging that all defendants engaged in unfair business acts and practices as prohibited by that state statute. For reasons explained below, the court determines that some of these counts must be dismissed for failure to state a claim for which relief may be granted, but other counts may go forward.

## **Standard of Review**

On a motion to dismiss a complaint brought pursuant to Fed. R. Civ. P. 12(b)(6), the court assumes all well-pled facts in the complaint are true, and permits all reasonable inferences from that pleading. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). Legal conclusions worded as factual allegations must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The plaintiff is not required to set forth a prima facie case for each element of each claim, as long as the factual content is sufficient to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016). Further, the Rule "does not countenance dismissals based on a judge's disbelief

of a complaint's factual allegations; a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal punctuation omitted).

In addition, the court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which the court may take judicial notice." *Berneike*, 708 F.3d at 1146 (internal quotations omitted).

### *Choice of law*

Davis urges the court to apply Kansas law in its analysis. Generally, the choice of law rules of the transferring court will govern the case after transfer, unless the transferring court determined that it lacked personal jurisdiction over the defendants. *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001). In this case, the transferring judge granted the parties' motions to transfer venue, while denying as moot (or without prejudice) their motions to dismiss for lack of jurisdiction. (Doc. 116, at 18.) California's choice of law jurisprudence, however, directs the court back to Kansas law for legal malpractice cases. *Am. Export Partners, LLC v. Inman*, No. CV 04-1431 CBM, 2005 WL 6172582, at *6 n.7 (C.D. Cal. Feb. 28, 2005) ("Application of this test in legal malpractice cases has led to courts consistently applying the law of jurisdiction in which the attorney is admitted to practice, has an office, and where the legal services were performed.") Consequently, for the purposes of deciding this motion, the court will rely upon Kansas, rather than California, law, as appropriate.

### **Analysis**

### *Count I – RICO*

GemCap alleges that the defendants employed both wire and mail fraud as part of a "systematic enterprise to secure loan financing through fraudulent misrepresentations and illegal artifice, all with the purpose of enriching themselves at the expense of . . . GemCap." (Doc. 1-1, at ¶ 58–61.) Although

GemCap fails to specify, it appears from these allegations that GemCap believes defendants violated RICO's section 1962(c), which states that is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). To avoid dismissal at the pleading stage, GemCap must allege that defendants "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity," and that this conduct caused GemCap injury. *Sorenson v. Polukoff*, 784 F. App'x 572, 576 (10th Cir. 2019) (quoting *George*, 833 F.3d at 1248); *see also Llaca v. W. Range Ass'n*, 940 F.3d 1161, 1176 (10th Cir. 2019) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). A pattern of racketeering activity must be demonstrated by at least two related predicate acts; moreover, because RICO is intended to address long-term criminal conduct, there must be a threat of continued criminal activity. *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Tal v. Hogan*, 453 F.3d 1244, 1268 (10th Cir. 2006). Davis argues that the complaint lacks factual allegations to support a RICO claim based on several of the statute's requisite elements. The court focuses on the element of continuity.

Putting aside the analysis of whether GemCap may or may not be able to demonstrate two related fraudulent acts, the court holds that defendants' conduct does not pose a threat of the kind of continuing racketeering activity that the RICO statute was intended to curb. Continuing activity may be "closed-ended," that is, extending over a significant time period beyond a few weeks or months, or open-ended, that is, "by its nature [it] projects into the future with a threat of repetition." *H. J. Inc.*, 492 U.S. at 241. When a scheme has a limited and discrete purpose, such as the one GemCap outlines in its complaint, there is no continuing pattern or threat. "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by

multiple illegal acts, because the scheme ends when the purpose is accomplished." *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir. 1987). In this case, according to GemCap's alleged narrative, all defendants worked together for approximately a year to achieve the objective of Pertl's borrowing as much money as possible from GemCap, while undermining its rights to Pertl's collateral. As that goal has been met and Pertl is now in receivership, this so-called racketeering enterprise has reached its termination point. For these reasons, GemCap has failed to state a sufficient claim against Davis under RICO, and Count I may be dismissed as to defendants Jonathan W. Davis and Van Osdol, PC, for failure to state a claim for which relief may be granted.

### *Count IV – Fraud*

In its fourth cause of action, GemCap alleges that Davis, as well as Shane, Tucker and the Does, acted "fraudulently, despicably and in willful and conscious disregard of GemCap's rights" when they conspired to misrepresent Pertl's inventory base, by knowingly submitting inaccurate certifications to GemCap in order to induce GemCap to over-extend loan monies to Pertl. (Doc. 1-1, at ¶ 89.) Davis's specific acts in carrying out this fraud are the three outlined earlier: his misrepresentations to Cullen about the legitimacy of the Cargill sale; his confirmation to GemCap of the accuracy of the information memorandum, which included the proceeds from the fabricated Cargill sale; and the falsification of the cash flow projections in October 2018, when Davis advised Shane and Tucker to remove references to projected cattle and hay sales.

Davis complains that GemCap has failed to plead this claim with the particularity required by Fed. R. Civ. P. 9(b). The elements of an actionable fraud claim are an untrue statement; known to be false by the party making it; made with intent to deceive, or with reckless disregard for the truth; upon which the other party justifiably relies to his or her detriment. *Alires v. McGehee*, 85 P.3d 1191, 1195

(Kan. 2004). GemCap's allegations against Davis fit this definition, and, consequently, Davis's motion to dismiss Count IV is denied.

### *Counts V – Negligence*

Count V alleges that Davis (but not Van Osdol), Shane, Tucker and the Does were negligent when, in their capacity as officers and "primary decision makers" for Pertl, they provided false financial information to GemCap, failed to preserve GemCap's collateral, refused to permit GemCap to review Pertl's records, and otherwise failed to ensure that Pertl fulfilled its obligations under the loan agreements. A facially plausible claim for negligence requires allegations that, if true, would establish that the defendant owed a duty of care to the plaintiff, and breached that duty, resulting in damages to the plaintiff. *Patterson v. Cowley Cty.*, 413 P.3d 432, 437 (Kan. 2018). GemCap's allegation that Davis owed a duty to GemCap is based on its theory that Davis acted as a kind of *de facto* Pertl officer through his role in the business's day-to-day operations. (Doc. 1-1, at ¶ 93.) GemCap alleges that Davis was "constantly engaged in communications with the Borrower's other officers over the telephone, and oftentimes participating in conference calls . . . ; sometimes made business decisions, including directing payments. . . ." (Doc. 1-1, at ¶ 45.)

GemCap's theory about Davis's role is not supported by the factual allegations, and, moreover, it is legally flawed. The allegations do not support a finding that Davis exceeded his role as attorney-advisor for Pertl, and therefore became an officer. The allegations describe conduct consistent with the role of an attorney and advisor. *See* Kan. R. Prof. Cond. 2.1, Kan. Supr. Ct. R. 226. Generally speaking, a lawyer's sole duty is to his client. *Nelson v. Miller*, 607 P.2d 438, 451 (Kan. 1980). Davis was not an officer or employee of Pertl, and his role as Pertl's attorney did not transform him into an officer or employee of Pertl. Consequently, Davis had no duty of care to GemCap stemming from that capacity and the claim of negligence against Davis must be dismissed.

### *Count VI – Professional Negligence*

In this alternative count, GemCap alleges that Davis, Van Osdol and the Does owed GemCap a duty of due care based on their role as attorneys for Pertl, when they issued misleading opinions on Pertl's financial status and misrepresented the status of Pertl's collateral, in order to induce GemCap to advance funds to Pertl. Under certain circumstances, an attorney may owe a duty of care to a third-party who is not the client. *See Nelson*, 607 P.2d 438. An attorney is prohibited by the Rules of Professional Conduct from knowingly making a false statement of material fact to a third person. Kan. R. Prof. Cond. 4.1(a), Kan Supr. Ct. R. 226. The Kansas Supreme Court has ruled that "an attorney cannot be held liable for the consequences of professional negligence to an adversary of the client." *Bank IV Wichita v. Arn, Mullins, et al.*, 827 P.2d 758, 767 (Kan. 1992). However, while the relationship between a borrower and a creditor is often recognized as sufficiently adversarial as to extinguish any duty to the creditor by the borrower's attorney, there may be exceptions "in situations where an attorney renders services that the attorney should recognize as involving the foreseeable injury to a third-party beneficiary of the attorney-client contract." *Id.* at 767–78. The *Bank IV Wichita* court concluded:

> Before a nonclient third-party lender may state a legal malpractice claim against a borrower's attorney, a showing must be made that the attorney directly advised the lender or that the attorney intended or expected the lender to rely on the attorney for legal services concerning the matter in issue.

*Id.* at 769. GemCap has made facially plausible allegations that Davis directly advised it of the legitimacy of the cattle sale to Cargill, and also that Davis expected GemCap to rely on his confirmation of the financial material contained in both the cash flow forecast and the information memorandum. Commercial financial transactions such as the ones entered into by GemCap and Pertl require some reasonable reliance on both sides upon the representations made by the other. If, as GemCap alleges, those representations were false and Davis assisted in the delivery of those

-10-

falsehoods (while, at the same time, lending them the hallmarks of integrity that the court hopes a lawyer's confirmation provides), then Davis, and Van Osdol, may be liable to GemCap for professional negligence. Therefore, Davis' motion to dismiss Count VI is denied.

### *Count XII – Unfair Business Practices*

Finally, GemCap alleges that all defendants violated California's Business and Professions Code section 17200, which includes a prohibition against "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. While GemCap alleges that its business is based in California, Davis is licensed in Kansas. Moreover, the alleged conduct that GemCap complains of took place in Kansas. Consistent with the holdings of California courts in analogous circumstances, this court is unwilling to impose liability for violation of a California statute on Kansas defendants for Kansas conduct in a Kansas proceeding. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (holding that "extraterritorial application of the U[nfair] C[ompetition] L[aw] is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state"); *Nw. Mortg., Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 24 (Cal. Ct. App. 4th 1989) ("We ordinarily presume the Legislature did not intend the statutes of this state to have force of operation beyond the boundaries of the state."). Consequently, the court grants Davis's motion to dismiss Count XII against Davis and Van Osdol.

### **Conclusion**

For the reasons set forth above the court grants in part and denies in part the motion to dismiss brought by defendants Jonathan W. Davis and Van Osdol, PC, who are identified collectively in this order as Davis. Because GemCap has failed to plausibly plead that defendants' alleged collective action constitutes a continued or ongoing racketeering enterprise, the court dismisses Count I (RICO) against Davis. Davis's motion to dismiss Count IV (Fraud) is denied, as GemCap has set forth facially

plausible allegations of fraud. Count V (Negligence) is dismissed as to Davis as failing to state a claim on which relief may be granted because, as a matter of law, Davis, as attorney for Pertl, was not an officer of Pertl and owed no duty of care resulting from their capacity as officer. Count VI (Professional Negligence) may go forward, because, according to the facts as alleged, Davis may have owed a duty to GemCap to provide it with truthful legal opinions. Count XII (Unfair Business Practices) is dismissed as against Davis because, in accordance with California legal precedent, this state statute may not be enforced extraterritorially.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 126) GemCap's first amended complaint (Doc. 1-1) for failure to state a claim for which relief may be granted is granted in part and denied in part, only as to defendants Jonathan W. Davis and Van Osdol, PC, as follows:

Count I (RICO): Defendants' motion is granted, and this count is dismissed;

Count IV (Fraud): Defendants' motion is denied;

Count V (Negligence): Defendants' motion is granted, and this count is dismissed;

Count VI (Professional Negligence): Defendants' motion is denied;

Count XII (Unfair Business Practices): Defendants' motion is granted, and this count is dismissed.

No judgment shall enter until all claims are resolved.

Dated this 16th day of December, 2019, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**